In the Supreme Court of Georgia

Decided: October 31, 2017

S17A1314. JONES et al. v. PEACH TRADER INC., et al.

GRANT, Justice.

This appeal arises from an order modifying an existing interlocutory injunction. After a somewhat convoluted path brought the case to our Court, we now vacate the trial court's order dismissing appellant's initial notice of appeal because Georgia law vests appellate courts with the sole authority to determine if a decision or judgment is appealable. But that is not the end of the matter. Because an order modifying an interlocutory injunction is not subject to direct appeal under OCGA § 5-6-34 (a) (4), we dismiss the appeal.

I.

In December 2015, appellee Peach Trader Inc., d/b/a A City Discount and A City Discount, Inc. ("Peach Trader"), filed a complaint against appellants Jeffery Glenn Jones and Sharon Kelley Jones, a married couple, alleging that Mr. Jones used his position as an employee to embezzle or misappropriate over $1 million from Peach Trader and take advantage of

business opportunities for personal gain to the detriment of his employer. Along with its complaint, Peach Trader sought a temporary restraining order against the Joneses, and the order was granted in December 2015. The Joneses then filed a motion to dissolve the order. One month later, on January 15, 2016, the trial court held a hearing where both parties presented evidence. The trial court entered an order granting an interlocutory injunction against the Joneses that prohibited them from selling, transferring, altering, encumbering, or otherwise disposing of any assets within their custody, control, or possession. The Joneses did not attempt to appeal the January 15 order.

Six months later, in July, the Joneses filed a second motion to dissolve the interlocutory injunction. During a hearing on several outstanding issues, Peach Trader's counsel consented to certain accounts being removed from the purview of the interlocutory injunction.[1] In line with the agreement between the parties, on September 9, 2016, the trial court entered an order denying the Joneses' motion to dissolve the interlocutory injunction but granting the

---

[1] The parties agreed that the Joneses should have access to a particular checking account with a balance of approximately $11,000 in order to purchase food, gas, and other necessary items.

motion to modify the injunction by removing the restrictions on at least one of the Joneses' accounts as agreed to by the parties.[2]

The Joneses initially sought a certificate of immediate review from the September 9 order. The trial court denied their request, concluding that the order did not warrant immediate review. The Joneses then filed a timely notice of direct appeal from the September 9 order. But the trial court dismissed the notice of direct appeal as an unauthorized attempt to appeal an interlocutory order without a certificate of immediate review. The Joneses then filed a notice of appeal from the trial court's dismissal order. The trial court dismissed that notice of appeal as well. The Joneses timely filed an application for discretionary appeal with this Court seeking review of the trial court's September 9 order and the two orders dismissing their notices of appeal.

This Court construed the application for discretionary appeal as a motion to stay the trial court's December 9 order dismissing the Joneses' notice of appeal (which, again, sought to appeal the trial court's prior dismissal of their direct appeal). We granted the stay and asked the parties to brief two issues: First, whether the trial court erred when it dismissed the notice of appeal

_____

[2] For clarity's sake, this order is referred to as the September 9 order.

3

stemming from the order dismissing the Joneses' notice of direct appeal; and second, whether the September 9 order was final or interlocutory under OCGA §§ 5-6-34 and 5-6-35. In addition to answering those two questions, the Joneses presented several arguments on the merits of the trial court's refusal to dissolve the interlocutory injunction at issue.

## II.

We begin with an examination of whether the trial court erred in dismissing the Joneses' notice of appeal based on its own conclusion that the underlying order was not appealable. We conclude that the trial court did err because Georgia law generally reserves to the appellate courts the authority to dismiss appeals. See OCGA § 5-6-48.

We have indicated before that trial courts ought not dismiss appeals: "An appellate court is the sole authority in determining whether a filed notice of appeal or discretionary application is sufficient to invoke its jurisdiction." *Rollins v. Rollins*, 300 Ga. 485, 488 (1) (796 SE2d 721) (2017) (quotation omitted); see also *Islamakhan v. Khan*, 299 Ga. 548 (787 SE2d 731) (2016); *Sotter v. Stephen*s, 291 Ga. 79 (727 SE2d 484) (2012); *Lamb v. Salvation Army*, 301 Ga. App. 325 (687 SE2d 615) (2009); *Hughes v. Sikes*, 273 Ga. 804 (546 SE2d 518) (2001); *Azar v. Baird*, 232 Ga. 81 (205 SE2d 273) (1974). But our

4

cases have also generated some confusion on that question by approving trial court dismissals in some instances and by describing different standards for appealing the dismissal of "properly filed" and "improperly filed" notices of appeal. Compare *Sotter v. Stephens*, 291 Ga. 79, 81 (727 SE2d 484) (2012) (appellants were entitled to appeal from dismissal of properly filed notices of appeal), with *Am. Medical Sec. Group, Inc. v. Parker*, 284 Ga. 102, 103 (2) (663 SE2d 697) (2008) (a trial court's order dismissing an *improperly* filed direct appeal is considered interlocutory and is not itself subject to direct appeal). We now take this opportunity to reiterate the parameters of a trial court's authority to dismiss a notice of appeal under OCGA § 5-6-48.[3]

---

[3] OCGA § 5-6-48 provides, in relevant part:

> (a) Failure of any party to perfect service of any notice or other paper hereunder shall not work dismissal; but the trial and appellate courts shall at any stage of the proceeding require that parties be served in such manner as will permit a just and expeditious determination of the appeal and shall, when necessary, grant such continuance as may be required under the circumstances.

> (b) No appeal shall be dismissed or its validity affected for any cause nor shall consideration of any enumerated error be refused, except:

(1) For failure to file notice of appeal within the time required as provided in this article or within any extension of time granted hereunder;

(2) Where the decision or judgment is not then appealable; or

(3) Where the questions presented have become moot.

(c) No appeal shall be dismissed by the appellate court nor consideration of any error therein refused because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court; but *the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party. In like manner, the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court*, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence; provided, however, that no appeal shall be dismissed for failure to pay costs if costs are paid within 20 days (exclusive of Saturdays, Sundays, and legal holidays) of receipt by the appellant of notice, mailed by registered or certified mail or statutory overnight delivery, of the amount of costs.

(d) At any stage of the proceedings, either before or after argument, the court shall by order, either with or without motion, provide for all necessary amendments, require the trial court to make corrections in the record or transcript or certify what transpired below which does not appear from the record on appeal, require that additional portions of the record or transcript of proceedings be sent up, or require that a complete transcript of evidence and proceedings be prepared and sent up, or take any other action to perfect the appeal and record so that the appellate court can and will pass upon the appeal and not dismiss it. If an error appears in the notice of appeal, the court shall allow the notice of appeal to

Georgia law provides that, as a matter of statute, no appeal shall be dismissed except where the notice of appeal is not filed in a timely manner, where the decision or judgment is not appealable, or where the question presented has become moot. OCGA § 5-6-48 (b). Here, the question is whether the trial court was permitted to dismiss the Joneses' notice of appeal based on its own conclusion that the underlying decision or judgment was not appealable, but the analysis below applies equally to questions of timeliness or mootness. Members of this Court, in the past, have expressed concerns that trial courts have exceeded their statutory authority in this arena. See, e.g., *Am. Med. Sec. Grp., Inc.*, 284 Ga. at 108 (Benham, J., concurring) (questioning the trial court's authority to dismiss a notice of appeal "on the ground that the order being appealed is not subject to direct appeal" and concluding that the three grounds for dismissal in OCGA § 5-6-48 (b) all pertain to dismissal by the appellate court). We now reiterate that Georgia law does not contemplate such a dismissal by the trial court under OCGA § 5-6-48 (b).

be amended at any time prior to judgment to perfect the appeal so that the appellate court can and will pass upon the appeal and not dismiss it.

(emphasis added).

7

In reaching this conclusion, we look first to the statute's text, which we read both for its plain meaning and in the context in which it appears. *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). At first blush, the text of OCGA § 5-6-48 (b) does not state which courts may determine whether an order is appealable, timely, or moot. Yet other parts of the statute distinguish between trial court and appellate courts. In this way, subsection (b) is ambiguous. See, e.g., *Tibbles v. Teachers Ret. Sys. of Georgia*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("When such a genuine ambiguity appears [in a statute], it usually is for the courts to resolve the ambiguity by ascertaining the most natural and reasonable understanding of the text.").

Our reading reveals that the trial court's procedural and substantive authority over a notice of appeal is decidedly limited. For example, subsection (a) provides that the failure of any party to perfect service of a notice of appeal will not result in dismissal; instead, the "trial and appellate courts shall at any stage of the proceeding require that parties be served" to permit a "just and expeditious determination of the appeal." OCGA § 5-6-48 (a). Moreover, a portion of subsection (c) is directed specifically to trial courts and provides that "a trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing

8

of the transcript and it is shown that the delay was inexcusable and was caused by such party." OCGA § 5-6-48 (c).[4] The trial court's authority under the statute is directed to tasks that ensure an appeal can proceed to the appellate court for decision. The statute's directives to appellate courts also counsel in favor of a reading that assures that dismissal authority lies with the appellate courts. First, as a general matter, supersedeas is presumed to attach in civil cases as soon as a notice of appeal is filed. *Rollins*, 300 Ga. at 486 (1); see also OCGA § 5-6-46. This deprives the trial court of the authority to act on the judgment on appeal. Id. Even if an appeal is jurisdictionally defective from the outset, a notice of appeal generally acts as supersedeas until the appeal is dismissed. Id. Additionally, subsection (d) refers to "the court" when providing that the appellate courts can require record corrections and other

---

[4] This conclusion does not undermine the trial court's authority to certify that an interlocutory order should be subject to immediate review. That authority is provided for by statute in OCGA § 5-6-34 (b). See *Sosniak v. State*, 292 Ga. 35, 37 (734 SE2d 362) (2012) ("The usual remedy for a party aggrieved by an order that does not terminate the case in the trial court, and is not authorized for direct appeal by OCGA § 5-6-34(a)(2)-(12), is to seek a certificate of immediate review from the trial court and then file an application for interlocutory appeal."). Moreover, we encourage trial courts to use that procedure when issues of immediate importance appear to be present. See, e.g., *Rivera v. Washington*, 298 Ga. 770, 777 (784 SE2d 775) (2016).

9

actions from "the trial court." OCGA § 5-6-48 (d). Subsection (d) also permits amendment of a notice of appeal "so that the appellate court can and will pass upon the appeal and not dismiss it." OCGA § 5-6-48 (d). Subsection (d) further shows that, when the statute is considered as a whole, the dismissal authority in subsection (b) is granted to the appellate courts, whereas the authority granted to trial courts is to take the necessary steps to permit an appeal to proceed. Trial courts are authorized to dismiss an appeal only when there "has been an unreasonable delay in the filing of the transcript" or where "there has been an unreasonable delay in the transmission of the record to the appellate court" caused by the failure of a party to pay costs or file an indigency affidavit. OCGA § 5-6-48 (c). Other dismissals are reserved to the appellate courts.

This statutory directive is in line with the significant weight of our cases. The Appellate Practice Act was adopted in 1965, and, at that time, the Act provided four reasons to dismiss an appeal.[5] Less than ten years after the

---

[5] Those four statutory reasons were: "(1) failure to file notice of appeal within the time required as provided in this Act or within any extension of time granted hereunder; (2) where the decision or judgment is not then appealable; (3) where the questions presented have become moot; or (4) where no brief is filed on behalf of the appellant within the time prescribed by the rules of the appellate court." Ga. L. 1965, p. 29, § 13 (b). After some minor changes, the

Appellate Practice Act was adopted, we first recognized that "the dismissal of an appeal is not mandatory except for the three specific instances," and that "[a]ll three relate to dismissals by the appellate courts." *Young v. Climatrol Se. Distrib. Corp.*, 237 Ga. 53, 54 (226 SE2d 737) (1976). Although we have reiterated this view, we have done so inconsistently. Compare *Bd. of Comm'rs of Atkinson Cty. v. Guthrie*, 273 Ga. 1, 2 (1) (537 SE2d 329) (2000) ("OCGA § 5-6-48(b) lists three grounds for an *appellate court* to dismiss an appeal.") (emphasis added), with *Riley v. State*, 280 Ga. 267, 268 (626 SE2d 116) (2006) (trial court did not err in granting the State's motion to dismiss notice of appeal as untimely under the statutory authority in OCGA 5-6-48 (b) (1)), *Grant v. Gaines*, 265 Ga. 159, 159 (454 SE2d 481) (1995) (trial judge was authorized to dismiss unauthorized notice of appeal), and *Jones v. Singleton*, 253 Ga. 41, 41 (1) (316 SE2d 154) (1984) (affirming the trial court's dismissal of two notices of appeal where the underlying order was interlocutory and the case was not certified for immediate review under OCGA § 5-6-34 (b)).

---

fourth reason, relating to filing the appellant's brief, was stricken in 1966. Ga. L. 1966, p. 493, § 10. The statutory reasons for dismissing an appeal have remained largely unchanged since then. The Supreme Court and the Court of Appeals also have internally-promulgated rules that may result in the dismissal of an appeal after docketing, but those rules are not of concern here because they only apply, by their nature, to appellate courts and not to trial courts.

11

In *Jones v. Singleton*, we stated without any analysis that the trial court had properly dismissed appellant's first two notices of appeal since, at the time they were filed, there was no final judgment. *Jones*, 253 Ga. at 41 (1). Trial courts have viewed *Jones* and its progeny as permitting them to dismiss notices of appeals for the reasons set forth in OCGA § 5-6-48 (b). And our Court of Appeals has likewise applied *Jones* to permit a trial court to dismiss an appeal for the reasons set forth in OCGA § 5-6-48 (b). See, e.g., *Mashburn Family Trusts v. City of Cumming*, 340 Ga. App. 616, 617 (797 SE2d 925) (2017) (affirming superior court dismissal of notice of appeal as moot under OCGA § 5-6-48 (b)); *Northen v. Frolick & Assocs.*, 235 Ga. App. 804, 805 (510 SE2d 122) (1998) (affirming trial court's dismissal of a notice of appeal); *Dep't of Human Res. v. Chambers*, 211 Ga. App. 763, 765 (1) (441 SE2d 77) (1994) (affirming trial court's dismissal of an appeal for mootness); *Attwell v. Lane Co.*, 182 Ga. App. 813, 813 (357 SE2d 142) (1987) (same); *Crumbley v. Wyant*, 183 Ga. App. 802, 803 (360 SE2d 276) (1987) (reversing a trial court order dismissing a notice of appeal as untimely). But these cases, like *Jones*, contain no analysis suggesting that our statute actually commits the authority to dismiss an appeal to the trial court in these circumstances. Because we again hold that the "appellate court is the sole authority in determining whether a

12

filed notice of appeal or discretionary application is sufficient to invoke its jurisdiction," we disapprove of these cases[6] and others to the extent that they suggest otherwise. *Islamkhan*, 299 Ga. at 552, n.7 (citing *Hughes v. Sikes*, 273 Ga. 804, 805 (546 SE2d 518) (2001)); see also *Rollins v. Rollins*, 300 Ga. 485, 488 (796 SE2d 721) (2017) (same).

We pause to note that trial courts need not be stymied by the repetitive filing of notices of appeal challenging interlocutory decisions solely for the purpose of creating disruption and delay.[7] As we have recognized, if an appellate court determines that an appeal was not authorized because the decision at issue was interlocutory rather than final, and, therefore, subject to the requirements in OCGA § 5-6-34 (b), then supersedeas never attached because the case was not truly on appeal; accordingly, the trial court's intervening decisions will stand. See *Cohran v. Carlin*, 249 Ga. 510, 511-512 (291 SE2d 538) (1982) (trial judge loses jurisdiction over order on appeal but

---

[6] *Riley*, 280 Ga. 267; *Grant*, 265 Ga. 159; *Jones*, 253 Ga. 41.

[7] Frivolous, delay-oriented appeals are also less likely because parties can be sanctioned for filing appeals for purposes of delay. *Rollins*, 300 Ga. at 487 (citing OCGA § 5-6-6, Supreme Court Rule 6, and Court of Appeals Rule 15 (b)). We emphasize that this authority, much like the dismissal authority in OCGA § 5-6-48 (b), is reserved to the appellate courts.

does not lose jurisdiction over matters independent and distinct from that order).  Because "an attempt to appeal an interlocutory order without following the procedures statutorily mandated is ineffective in conferring jurisdiction on the appellate court," a trial court does not need to issue an order dismissing an unauthorized notice of appeal in order to prevent supersedeas from attaching under those circumstances.  *Islamkhan*, 299 Ga. at 548, n.7.[8]

Because the trial court did not have the authority to dismiss the Joneses' notice of appeal, we vacate the October 28, 2016, order dismissing their direct appeal based on the trial court's conclusion that the underlying order was not appealable.  We likewise vacate the trial court's December 9, 2016, order dismissing the Joneses' appeal from its October 28 order.  Accordingly, the Joneses' notice of appeal challenging the September 9, 2016, order is now before us.

---

[8] We note that our discussion concerns only supersedeas in civil cases, not criminal cases.  There may be instances in which superseadeas does not attach automatically in a criminal case and those are beyond the scope of this opinion.  See, e.g., *Harvey v. State*, 296 Ga. 823, 829 n.2 (770 SE2d 840) (2015) ("Where a defendant files a notice of appeal challenging the denial of a plea in bar that the trial court finds to be frivolous or dilatory, the defendant may be retried, convicted, and sentenced despite the pendency of the defendant's appeal.").

14

III.

Having concluded that the trial court exceeded its authority when it dismissed the Joneses' direct appeal, we now turn to the question of whether the September 9 order, which modified an interlocutory injunction, was directly appealable or, instead, was subject to the requirements of OCGA §§ 5-6-34 (b) or 5-6-35. This question requires that we determine whether the order falls within OCGA § 5-6-34 (a) (4), which permits a direct appeal from "[a]ll judgments or orders granting or refusing applications for receivers *or for interlocutory or final injunctions*." (Emphasis added). The Joneses contend that an order *modifying* an interlocutory injunction is directly appealable as a logical extension of the statutory text. But we hold that this provision means just what it says—that is, orders granting or refusing applications for interlocutory injunctions are eligible for direct appeal—and that orders modifying or dissolving interlocutory injunctions are appealable only on an interlocutory basis pursuant to OCGA § 5-6-34 (b).

Georgia law is well settled that the right to appeal is not constitutional, but instead depends on statutory authority. *Islamkhan*, 299 Ga. at 550. Our statutes set out a particular set of cases as eligible for direct appeal in OCGA § 5-6-34 (a). Such review may be mandatory or discretionary. OCGA § 5-6-

15

35 (a). Other cases can be appealed with permission from both the trial court and the appellate court. OCGA § 5-6-34 (b). As we already noted, "[t]he grant of a temporary injunction is appealable." *Pizza Hut of Am., Inc. v. Kesler*, 254 Ga. 360, 360 (1) (329 SE2d 133) (1985) (per curiam). Likewise, the denial of injunctive relief authorizes a direct appeal. See *Fountain v. DeKalb Cty.*, 238 Ga. 14, 15 (231 SE2d 49) (1976). We turn now to whether the statute embraces a direct appeal from an order modifying an interlocutory injunction. It does not.

> Our rules of statutory interpretation are clear:
>
> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Coleman*, 294 Ga. at 172-173 (internal citations and quotations omitted). The plain and ordinary meaning of "granting or refusing applications for . . . interlocutory . . . injunctions" does not include orders modifying the same. See OCGA § 5-6-34 (a) (4). And a historical examination of both our statutes and this Court's treatment of the issue supports the conclusion that an order

16

modifying an interlocutory injunction is not directly appealable within the meaning of OCGA § 5-6-34 (a).

Injunctions—and temporary restraining orders—have a longstanding history in Georgia law. Prior to 1873, this Court held that interlocutory rulings on injunctions were not final judgments and could not be appealed by a separate writ of error[9] while the main cause was pending. See, e.g., *Camfield v. Shaw*, 40 Ga. 492 (1869) (holding that a writ of error does not lie to an ex parte order for injunction granted in chambers). The General Assembly's response to these holdings was to "put an end to all ex parte injunctions" and provide for "temporary restraining orders in urgent cases until a hearing could be had." The statute provided for a "fast writ," or immediate review, for the grant or denial of an application for injunction. It did not, however, provide for any review of temporary restraining orders, which could be issued ex parte and would remain in place until a hearing on the application for injunction could be held. Ga. L. 1873, p. 548, § 3211; *Kaufman v. M. Ferst & Co.*, 55 Ga. 350, 352 (1875). Such orders were considered "definite and distinct" from

---

[9] A writ of error is "a writ issued by the appellate court directing a lower court to deliver the record in the case for review." Black's Law Dictionary (10th ed. 2014)

orders granting or refusing interlocutory injunctions. *Mayor of Savannah v. Grayson*, 104 Ga. 105, 105 (1) (30 SE 693) (1898). Important for our analysis here, this Court held in 1875 that a writ of error "is confined to granting or refusing injunction and does not extend to dissolving, vacating, or setting aside what has already been granted." *Kaufman*, 55 Ga. at 353; see also *Bacon v. Capital City Bank*, 105 Ga. 700, 700 (31 SE 588) (1898) (order modifying previously granted order for injunction and appointment of receiver is not subject to a fast bill of exception); *Harris v. City of Sparta*, 130 Ga. 60, 60 (60 SE 192) (1908) ("[T]his court cannot, on a fast writ of error, review an order granting or refusing a temporary restraining order, or dissolving or refusing to dissolve one when granted.").

In 1910, the General Assembly retained direct review for injunctions, providing that "either party may have a writ of error" to the Supreme Court from a decision made after a hearing to "grant or refuse [an] injunction." Ga. L. 1910, p. 1287, §5502. Just two decades later, our statutory scheme still provided for a "fast writ of error" in cases "granting or refusing applications for injunction," but still made no provision for immediate appeal of orders modifying, dissolving, or vacating an injunction. Ga. L. 1933, p. 202, § 6-903. Our precedents, likewise, continued to acknowledge that orders modifying

18

interlocutory injunctions or temporary restraining orders were not immediately appealable by a fast writ of error. *Eagle Pub. Co. v. Mercer*, 154 Ga. 246 (114 SE 26) (1922) (acknowledging that the refusal to vacate or modify an interlocutory injunction is not a final adjudication which will support a writ of error); *Johnson v. Troup Cty. Rural Electrification Corp.*, 184 Ga. 527, 527 (192 SE 15) (1937) (this Court lacked jurisdiction to hear a fast writ of exception from an order dissolving or modifying a temporary restraining order even though the issue was decided after a hearing); *Aker Motor Lines v. Cook*, 211 Ga. 23, 24 (1) (83 SE2d 586) (1954) (acknowledging that fast bill of exceptions will lie from cases granting or refusing applications for injunction but not from an order dissolving, vacating, or modifying a temporary restraining order).[10]

---

[10] In *Moore v. Selman*, 219 Ga. 865 (136 SE2d 329) (1964), this Court held that orders "dissolving, revoking, or setting aside a previously granted temporary injunction, which would in effect constitute a denial of the temporary injunction," were reviewable on the same basis as orders denying temporary injunctions. To the extent that *Moore* recognized a narrow exception along the lines that a decision that was tantamount to the original grant or denial of an injunction can be subject to immediate review, we need not decide today whether that exception remains viable after the enactment of the Appellate Practice Act. This case is not one in which the modification and refusal to dissolve the existing injunction could be fairly characterized as the grant or refusal of injunctive relief.

19

In 1965, our state's modern appellate practices began to take shape and the General Assembly passed the Appellate Practice Act of 1965 with the purpose of "comprehensively and exhaustively" modernizing appellate procedure in civil cases. Ga. L. 1965, p. 18. The 1965 Act retained the procedure for direct appeal from all judgments or orders "granting or refusing an application for interlocutory injunction," and also added a new provision to permit a direct appeal from "all judgments or orders rendered after hearing continuing in effect, modifying, vacating, or refusing to continue, modify, or vacate a temporary restraining order." Ga. L. 1965, p. 19, § 3. Of course, "changes in statutory language generally indicate an intent to change the meaning of the statute." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010). And here, the 1965 Act sets forth a response to case law permitting direct appeals from orders granting or refusing interlocutory injunctions—but not from orders dissolving, modifying, or vacating temporary restraining orders. What the text also evidences is the ability of the General Assembly to distinguish between lower court orders that grant or refuse an initial application versus those orders that modify or vacate an existing order. "Where, as here, 'the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'"

20

*Berryhill v. Georgia Cmty. Support & Sols., Inc.*, 281 Ga. 439, 442 (638 SE2d 278) (2006) (quoting 2A Norman J. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th ed. 2000)).

Between 1965 and 1984, the statutory scheme remained relatively unchanged and permitted direct appeals both from orders "granting or refusing" interlocutory injunctions and from orders (rendered after a hearing) "continuing in effect, modifying, vacating, or refusing to continue, modify or vacate" a temporary restraining order. Consequently, during this interval our cases recognized that orders dissolving or modifying temporary restraining orders were directly appealable, though appellate courts sought to mold the parameters of such appeals. See, e.g., *Coffey Enterprises Realty & Dev. Co. v. Dep't of Transp.*, 248 Ga. 224, 224 (281 SE2d 611) (1981) (appeal from order granting temporary restraining order was moot because the temporary restraining orders expired by operation of law 30 days after entry); see also *Clements v. Kushinka*, 233 Ga. 273 (210 SE2d 804) (1974) (the issue of dissolving a temporary restraining order must have been heard and determined on its merits, rather than happening by operation of law, before a judgment dissolving or refusing to dissolve such an order is subject to appeal). Cases during that period sometimes intermingled their evaluation of temporary

21

restraining orders and interlocutory injunctions. These cases were decided during the relatively brief time when the Appellate Practice Act's temporary restraining order provision permitted direct appeal. See, e.g., *United Food & Commercial Workers Union v. Amberjack Ltd.*, 253 Ga. 438, 438 (321 SE2d 736) (1984) (an appeal from the denial of a motion to dissolve a temporary restraining order when coupled with the grant of an interlocutory injunction is subject to direct appeal).[11] But the General Assembly has since amended our Appellate Practice Act and it no longer provides for direct appeal from temporary restraining orders.

In 1984, the Legislature amended the Appellate Practice Act to require applications to appeal in certain cases as part of an overhaul of Georgia's appellate procedures. Ga. L. 1984, p. 599. This enactment resembles the

---

[11] We note that the Court of Appeals, at least in one case, has permitted a direct appeal from an order merely modifying an interlocutory injunction on the basis that such an order constitutes the grant of a separate interlocutory injunction. *Am. Management Servs. East, Inc. v. Fort Benning Family Communities, LLC*, 318 Ga. App. 827, 827 (1) (734 SE2d 833) (2012) (determining, without any citation to authority, that an order modifying a previously granted interlocutory injunction in order to lift one restriction is itself a separate interlocutory injunction that is directly appealable even when other restrictions remain unchanged). Because our statutory analysis demonstrates that this violates the language of OCGA § 5-6-34 (a) (4), we overrule that case to the extent that it holds that the modification of an interlocutory injunction constitutes the grant of a new interlocutory injunction and is therefore subject to direct appeal.

22

modern structure of OCGA §§ 5-6-34 and 5-6-35. Under the 1984 Act, orders granting or refusing interlocutory injunctions remained subject to direct appeal. Ga. L. 1984, p. 600, § 1. But appeals from orders granting or denying temporary restraining orders moved to the discretionary application statute. Ga. L. 1984, p. 601, § 2. And, strikingly, the Legislature eliminated the language permitting appeals from orders "continuing in effect, modifying, vacating, or refusing to continue, modify or vacate" temporary restraining orders.

Our rules of statutory interpretation demand that we attach significance to this action. See *Transp. Ins. Co. v. El Chico Restaurants, Inc.*, 271 Ga. 774, 776 (524 SE2d 486) (1999) (acknowledging that the rules of statutory interpretation attach significance to the Legislature's action in removing certain limiting language from the statute at issue). To this day, interlocutory injunctions and temporary restraining orders have remained subject to different appellate procedures. Compare OCGA § 5-6-34 (a) (4) (direct appeal from orders granting or refusing an application for interlocutory injunction), with OCGA § 5-6-35 (a) (9) (appeals from order granting or refusing a temporary restraining order must come by application). And while orders modifying temporary restraining orders were appealable for some period of time, no

23

similar provision ever existed for appeals from orders modifying interlocutory or final injunctions. In fact, the language permitting an appeal from orders "granting or refusing" applications for an injunction has remained constant for over 100 years. The necessary conclusion from the statutory scheme is that orders granting or refusing interlocutory injunctions are subject to direct appeal, but that orders merely modifying interlocutory injunctions are not. The statutory history demonstrates that the General Assembly appreciates the difference between lower court actions granting, refusing, modifying, dissolving, or vacating an order. That point is reaffirmed by the fact that our current Code, for instance, permits a direct appeal from an order "modifying" a child custody award. See OCGA § 5-6-34 (a) (11). And while the General Assembly differentiates between granting or refusing and modifying, it has never extended our direct appeal statute to embrace direct appeal from orders modifying interlocutory injunctions. This Court likewise has not announced any expansion of the statutory text.

We again conclude that an order modifying an interlocutory injunction is not directly appealable under OCGA § 5-6-34 (a) (4). This Court has recognized for more than a century that this rule could, in certain instances, be unfortunate from a policy perspective: "This may in some instances amount

24

to a great hardship, as is claimed to be true in the present case; but this court has no jurisdiction to entertain such a bill of exceptions as the present, however great may be the injustice to the party complaining." *Bacon*, 105 Ga. at 700. Fortunately for today's litigants, the modern Code permits parties to seek immediate review of questions of importance or urgency even where no direct appeal is otherwise available. OCGA § 5-6-34 (b). And, of course, the General Assembly can choose to change the scheme for appellate review should it deem a different policy choice more appropriate. Cf. *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016) ("The scheme for appellate interlocutory review is legislative in nature and provides ample opportunity for review in appropriate cases when a defense of immunity is raised. In the event that the General Assembly determines that the established framework does not adequately safeguard the interests of those who assert those defenses, it is for that body to change it.").

In sum, the Joneses seek a direct appeal from an order that modifies, or partially dissolves, an existing interlocutory injunction. That type of order is not directly appealable under OCGA § 5-6-34 (a) (4), nor is it subject to the discretionary application procedure for temporary restraining orders. Any review would have needed to come under OCGA § 5-6-34 (b), but the Joneses

25

did not obtain a certificate of immediate review from the trial court.  We therefore dismiss the Joneses' appeal for lack of appellate jurisdiction.  Accordingly, we need not reach the Joneses' remaining enumerations of error, all of which relate to the merits of the underlying injunction.

Trial court order vacated and appeal dismissed.  All the Justices concur.