**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 19, 2022**

# In the Court of Appeals of Georgia

A22A0854. FRANCO-ARROYO v. THE STATE.

LAND, Judge.

After a jury trial, Jesus Franco-Arroyo was convicted of computer pornography, criminal attempt to commit a felony (child molestation), and fleeing or attempting to elude a police officer. He appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his conviction for computer pornography. He also argues that his trial counsel rendered ineffective assistance when advising him on whether or not to testify at trial and that his computer pornography and criminal attempt to commit a felony convictions should have merged for sentencing. For the following reasons, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of

innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that Jonathon Kissee, a detective employed by the Woodstock police department Internet Crimes Against Children Task Force, created a false account on the MeetMe online dating app using the name "Stacey." Although the profile described Stacey as 42-year old woman, the photo attached to it was a "decoy photo" of an employee of the law enforcement agency that looked like a minor.

On October 31, 2020, Franco-Arroyo used the MeetMe app to message Stacey through her profile and asked if she wanted to have sex. Because MeetMe does not allow minors to use their dating service, Stacey asked to move their conversation to private text messaging outside the app. Franco-Arroyo then sent Stacey a text message requesting a photo. The officer posing as Stacey then sent a photo of a female co-worker that had been altered to look like a minor.

2

Franco-Arroyo then invited Stacey to come to his house. Stacey responded that she could not drive there because she was only 15 years old. Stacey then told Franco-Arroyo that she was "just lookin for some fun," her parents were divorced, her mother was out of town, and that she was "available." Franco-Arroyo sent a text message stating "If ur legit send me another pic but showing" some skin. Stacey declined, stating that she would not send him a more revealing photo because "[p]eople only see that in person." In response to Franco-Arroyo's comments about her being too young and asking if she was a cop posing as a child, Stacey texted, "If u don't want to have sex anymore that's fine I'll find someone else." Franco-Arroyo replied that he did not want "any trouble" and asked to speak with her on the phone to verify her identity.

A female officer impersonated Stacey on a short phone call and stated that she was "14 about to be 15 years old." Franco-Arroyo mentioned that she sounded older than 15 years old. They returned to text-messaging and Franco-Arroyo continued to have doubts, asking repeatedly if he was talking to a cop. The officer impersonating Stacey responded that "I'm not a f–ing cop but you keep asking me and it's pissing me off." Franco-Arroyo again texted a request for a revealing photograph and asked if she was "horny." Franco-Arroyo agreed to meet her at Dupree Park in Woodstock

at 1:30 a. m. to "do it" in his car. Their ensuing texts indicate that Franco-Arroyo got into his car, drove to the park, parked by the tennis courts, and was waiting for Stacey to meet him there. The officers then moved in to confront Franco-Arroyo in his car as he was typing a text message and he fled. A high-speed chase ensued and ended when Franco-Arroyo crashed into the carport of a house.

Franco-Arroyo was then arrested, *Mirandized*,[1] and brought to the police station, where he participated in a recorded interview. During the interview, Franco-Arroyo confirmed that the phone number that had been text-messaging Stacey belonged to him. He stated that he had planned to meet Stacey in person because he wanted to stop her from meeting older men online for sex and to try and tell her parents about it. Later in the interview, Franco-Arroyo voluntarily unlocked his phone and showed police the MeetMe application and his text message conversation with Stacey.

The jury convicted Franco-Arroyo of computer pornography, criminal attempt to commit a felony (child molestation), and fleeing or attempting to elude a police officer. He was sentenced to a total of fifteen years, with the first five years to be served in confinement. He now appeals from the denial of his motion for new trial.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 1966).

1. Franco-Arroyo contends that the evidence was insufficient to support his conviction for computer pornography under the Electronic Pornography and Child Exploitation and Prevention Act of 2007 OCGA § 16-12-100.2 (d) (1). Without citing to any relevant case law, Franco-Arroyo argues that the language of OCGA § 16-12-100.2 (d) (1) proscribes the act of getting "one child to commit child molestation *against another child*," and thus the evidence presented at trial did not support his conviction. This argument is without merit.

Count one of the indictment charged Franco-Arroyo with violating OCGA § 16-12-100.2 (d) (1) because he "intentionally and willfully by means of . . . a cellular telephone, *attempt[ed] to seduce, solicit and entice* 'Stacey,' a person believed by said accused to be a child under the age of 16, but actually being Det. Jonathan Kissee of the Woodstock Police Department, to commit an act of child molestation." (Emphasis supplied).

A person violates OCGA § 16-12-100.1 (d) (1) when he intentionally utilizes "a computer wireless service or internet service . . . to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child *[or] another person believed to be a child*. . . to commit any illegal act by, with, or against a child as described in", inter alia, OCGA § 16-6-4 (relating to the offense of child molestation). OCGA § 16-12-

5

100.2 (d). The "principal act proscribed" by this subsection "is *solicitation* and does not require the accomplishment of child molestation." *Bolton v. State*, 310 Ga. App. 801, 805 (1) (714 SE2d 377) (2011). Further, OCGA § 16-12-100.2 (d) (1) "explicitly provides for liability[,] even when there is no child[,] if the mens rea exists." *Spivey v. State,* 274 Ga. App. 834, 840 (2) (b) (619 SE2d 346) (2005).

When construing the meaning of a statute, this Court affords "the statutory text its plain and ordinary meaning, [viewing] the statutory text in the context in which it appears, and [reading] the statutory text in the most natural and reasonable way, as an ordinary speaker of the English language would." *Jones v. Peach Trader, Inc.*, 302 Ga. 504 (807 SE2d 840) (2017) (citation omitted). Contrary to Franco-Arroyo's assertion, the plain language of OCGA § 16-12-100.2 (d) (1) does not contemplate *a child soliciting another child*. Rather, subsection proscribes the solicitation of a child or person believed to be a child for the purpose of committing one of several enumerated sex offenses involving a child.

Here, the evidence presented at trial showed that Franco-Arroyo used the MeetMe app as well as text messages on his cell phone to solicit sex from a person who he believed was an underage girl, an act which would have constituted child molestation. The evidence set forth above was sufficient to establish his guilt of the

6

offense as charged. *Bolton*, 310 Ga. App. at 805 (1). Accord *Patch v. State*, 337 Ga. App. 233, 237 (1) (786 SE2d 882) (2016) (evidence was sufficient to show that defendant violated OCGA § 16-12-100.2 (d) (1) based upon his online interactions with a police officer posing as a 14-year-old girl, including asking her to watch him masturbate on a webcam); *Schlesselman v. State*, 332 Ga. App. 453, 455 (1) (773 SE2d 413) (2015) (evidence was sufficient to show that defendant violated OCGA § 16-12-100.2 (d) (1) when, through e-mail communications with an officer posing online as the mother of a 14-year-old girl, he urged and requested that the 14-year girl to engage in immoral or indecent acts).

2. Franco-Arroyo argues that his trial counsel rendered ineffective assistance by failing to instruct him that he was not required to admit to the charged crime before he could pursue the defense of entrapment and that—if he had known this— he would have chosen to take the stand. We are unpersuaded.

To prevail on this claim, Franco-Arroyo must show both that his trial counsel's performance was deficient and that the deficient performance resulted in prejudice to him. *Strickland v. Washington*, 466 U. S. 668, 687-95 (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the deficiency prong, Franco-Arroyo must show "that his attorney performed at trial in an objectively unreasonable way considering all the

7

circumstances and in the light of prevailing professional norms." (Citation omitted.) *Mitchell v. State*, 307 Ga. 855, 858 (2) (a) (838 SE2d 847) (2020). To satisfy the prejudice prong, he must "establish a reasonable probability that, in the absence of counsel's performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations and punctuation omitted.) Id. "We need not review both parts of this test if [Franco-Arroyo] fails to prove one of them." (Citation omitted.) *Strother v. State*, 305 Ga. 838, 848 (5) (828 SE2d 327) (2019). The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

Franco-Arroyo argues that if he had known that he did not have to admit the offense in order to be entitled to an entrapment charge, he would have chosen to testify on his own behalf. However, even if we assume that trial counsel rendered ineffective assistance in advising Franco-Arroyo on the law of entrapment, Franco-Arroyo has failed to show that his failure to testify on his own behalf was so prejudicial that it affected the result of the trial. At the hearing on the motion for new

8

trial, trial counsel testified that his decision to discourage Franco-Arroyo from testifying on his own behalf was not based on any misunderstanding of the law, but rather because Franco-Arroyo "had already done so much damage to his own credibility . . . in his discussions with the police officers after his arrest, that [trial counsel] just felt like it was better for him not to say much of anything after that." Trial counsel "didn't see any way Franco-Arroyo could clear that up effectively" if he took the stand. Trial counsel discouraged Franco-Arroyo from taking the stand because he "didn't want Franco-Arroyo to dig any deeper of a hole than he had already dug in the interviews," and believed that it would not persuade the jury.

Franco-Arroyo testified if he had taken the stand in his own defense, he would have testified that if Stacey had not been "so persistent," he would not have driven to the park to meet her for sex and that he had been the victim of abuse in the past. This testimony would not have overcome evidence of transcripts of the text messages between the officer impersonating Stacey and Franco-Arroyo where he agreed to meet Stacey for sex in the park even after he learned she was underage and had seen photos confirming that Stacey was a minor. Further, the trial court issued a jury instruction on entrapment. Thus, Franco-Arroyo has not proven that, but for the lack of his testimony at trial, there is a reasonable probability the outcome of the trial would have

9

been different. See *Thompson v. State*, 341 Ga. App. 883, 887 (3) (b) (802 SE2d 713) (2017) (no ineffective assistance where defendant did not demonstrate that failure to object to certain testimony resulted in prejudice to his defense).

3. Franco-Arroyo argues that his conviction for computer pornography (OCGA § 16-12-100.2 (d)) should merge with his conviction for criminal attempt to commit child molestation (OCGA § 16-4-1) for sentencing. We disagree.

Under OCGA § 16-1-7, when the same conduct of an accused establishes "the commission of more than one crime, the accused may be prosecuted for each crime" unless "[o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). To determine if one crime is included in and therefore merges with another, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine "whether each offense requires proof of a fact which the other does not." *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010). Accord *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017) (when the same act constitutes the violation of "two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. If so, two offenses exist, and one is

10

not "included in" the other") (citation omitted).Whether offenses merge is a legal question that this Court reviews de novo. *Johnson v. State*, 313 Ga. 15, 159 (4) (868 SE2d 226) (2022).

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step towards the commission of that crime." OCGA § 16-4-1. Here, Count 2 of the indictment alleged that Franco-Arroyo took a *substantial step* towards committing child molestation when he "discuss[ed] performing an act of sexual intercourse with a person he believed to be a child under the age of 16" and he "drove to Dupree Park . . . for the purpose of committing said acts with said child." In contrast, Count 1 of the indictment charged Franco-Arroyo with violating the electronic computer pornography act, OCGA § 16-12-100.2 (d) (1) by *using his "cellular telephone* [to] attempt to seduce, solicit and entice 'Stacey,' a person believed by said accused to be a child under the age of 16" for the purpose of committing "an act of child molestation." (Emphasis supplied).

The attempt to commit child molestation offense required the State to prove (1) that Franco-Arroyo had the *intent* to commit child molestation and (2) that he took a *substantial step* towards that act by discussing sexual acts with someone that he

11

believed to be a child and driving to the park for the purpose of having sex with said child. The computer pornography charge required the State to prove that he (1) *used a cellular telephone* (2) *to seduce or entice* a person he believed to be a child for the purpose of child molestation. Thus, each offense required proof of a fact that the other did not — the substantial step element of the attempt charge was not required to prove the computer pornography charge, while the use of a cellular telephone or internet messaging service element was not required to prove the attempted child molestation charge. See *Castaneira v. State*, 321 Ga. App. 418, 429-30 (6) (740 SE2d 400) (2013) (attempt to commit child molestation did not merge into attempt to entice a child for indecent purposes, even though premised upon the same conduct, because each required proof of fact which the other did not); *Crankshaw v. State*, 336 Ga. App. 700, 704 (4) (786 SE2d 245) (2016) (attempt to sell oxycodone offense did not merge into offense of possession of oxycodone with intent to distribute because each offense required proof of a fact that the other did not). "Because each crime required proof of at least one additional element that the other did not," they did not merge for the purposes of sentencing. *Smith v. State*, 320 Ga. App. 408, 413-414 (4) (740 SE2d 174) (2013).

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur.*

12