Melton, Justice.
In this action, John Clark, Ivory Kenneth Dious, Francys Johnson, Jr., Henry C. Ficklin, and Darryl A. Momon (collectively referred to as “Clark”) contend that Amanda H. Mercier, Neis S.D. Peterson, and Brian M. Rickman have no right to hold office as judges on our Court of Appeals.[1] Specifically, Clark contends that these new judges were improperly appointed by Governor Nathan Deal. For the reasons set forth below, we affirm the trial court’s denial of Clark’s petition for a writ of quo warranto.
1. The underlying facts of this case are not disputed. Effective on January 1, 2016, Act No. 138 (House Bill 279 or the “Act”) established three new seats on the Court of Appeals, amending OCGA § 15-3-1 (a) to provide for a total of 15 judges. In addition, OCGA § 15-3-4 was amended to add subsection (b), which provides in relevant part: “The additional judgeships created in 2015 shall be appointed by the Governor for a term beginning January 1, 2016, and continuing through December 31,2018, and until their successors are elected and qualified.” Pursuant to the Act, Governor Deal appointed Mercier, Peterson, and Rickman to the new positions. A short time after the Governor announced the appointments, but before the announced appointees took office, Clark filed a petition to challenge the appointments in the Superior Court of Fulton County, naming as defendants the Governor in his official capacity, Mercier, Peterson, and Rickman. Clark argued that the gubernatorial appointment of Court of Appeals judges to newly created seats violated the Georgia Constitution, maintaining that new judges are required to be chosen by general election. Accordingly, Clark requested the following: (1) a declaratory judgment that the appointment provision of the Act is unconstitutional; (2) an injunction and temporary restraining order against the Governor to stop him from commissioning or administering the oath *894 of office to the new judges; and (3) a writ of quo warranto against Mercier, Peterson, and Rickman.
The trial court denied Clark’s petition on the merits. After considering the Georgia Constitution, related statutory authority, and the history of judicial appointments to the Court of Appeals, the trial court held that the 1983 Georgia Constitution permits the Governor to fill newly created seats on the Court of Appeals by appointment. Clark then appealed, and, in addition, filed an emergency motion for supersedeas, again to prevent the Governor from administering the oath of office to the appointees. This Court denied the emergency motion on December 18,2015. The Governor also filed a cross-appeal, contending that the trial court erred in its determination that sovereign immunity did not protect him from thp injunction and declaratory judgment action brought against him. The new Court of Appeals judges took office on January 1, 2016.
2. Initially, we must determine what part, if any, of Clark’s action remains viable. Because the new judges have already taken office, those portions of Clark’s action relating to the issuance of a declaratory judgment, injunctive relief, and a temporary restraining order against the Governor are now moot, as the very action which Clark sought to stop has already occurred. “[I]f the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot.” (Citations and punctuation omitted.) Board of Commrs. of Richmond County v. Cooper, 259 Ga. 785 (387 SE2d 138) (1990). A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights. See Chastain v. Baker, 255 Ga. 432 (339 SE2d 241) (1986). Based on this same reasoning, the Governor’s cross-appeal is moot as well. The Governor was never prevented from swearing in and commissioning the new judges, and, therefore, there is no longer any reason to consider whether Clark’s unsuccessful attempt to enjoin and obtain a declaratory judgment against the Governor was barred by sovereign immunity. So, the only remaining part of this action which remains viable is Clark’s petition for a writ of quo warranto, which became ripe at the time that the new judges assumed office. Accordingly, this opinion addresses only that portion of the underlying suit.
3. Throughout this litigation, Clark has contended that OCGA § 15-3-4 (b) is unconstitutional because the Georgia Constitution requires that Court of Appeals judges who fill newly created seats must be selected by a general nonpartisan election. The Constitution, itself, belies this claim in Article VI, which address the judicial branch of government.
*895 Article VI, Section VII, Paragraph I does provide that
[a]ll superior court and state court judges shall be elected on a nonpartisan basis for a term of four years. All Justices of the Supreme Court and the Judges of the Court of Appeals shall be elected on a nonpartisan basis for a term of six years. The terms of all judges thus elected shall begin the next January 1 after their election. All other judges shall continue to be selected in the manner and for the term they were selected on June 30,1983, until otherwise provided by local law.
Likewise, OCGA § 21-2-9 (b) provides that Court of Appeals judges “shall be elected in the nonpartisan general election next preceding the expiration of the term of office.” However, Article VI, Section VII, Paragraph III expressly states that “[v]acaricies shall be filled by appointment of the Governor except as otherwise provided by law in the magistrate, probate, and juvenile courts.” (Emphasis supplied.) Therefore, the Constitution clearly allows the Governor to appoint new judges when there is a vacancy on the Court of Appeals. The only remaining question, then, is whether a newly created position on the Court of Appeals qualifies as a “vacancy” under Article VI, Section VII, Paragraph III. Both the appropriate rules of construction and the historical record indicate that it does.[2]
(a) In reviewing the propriety of OCGA § 15-3-4 (b), it must be remembered that “all presumptions are in favor of the constitutionality of [a statute].” (Citation and punctuation omitted.) JIG Real Estate, LLC v. Countrywide Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 820) (2011). Furthermore, we must “presume that the words used in the Constitution bear their ordinary meanings at the time those words were included. See Warren v. State, 294 Ga. 589, 590 (755 SE2d 171) (2014).” Savage v. State of Ga., 297 Ga. 627, 635 (4) (b) (774 SE2d 624) (2015). “ ‘Constitutions, like statutes, are properly to be' expounded in the light of conditions existing at the time of their adoption.’ [Cit.]” Clarke v. Johnson, 199 Ga. 163, 166 (33 SE2d 425) (1945).
*896 At the time that the Governor was given the power to appoint appellate judges to fill vacancies in the 1983 Constitution, Black’s Law Dictionary stated that “vacancy,” when applied to official positions, meant, “in its ordinary and popular sense, that an office is unoccupied, and that there is no incumbent who has a lawful right to continue therein until the happening of a future event, though the word is sometimes used with reference to an office temporarily filled.” Black’s Law Dictionary 1388 (5th ed. 1979). As noted by the trial court, a standard dictionary likewise defined “vacancy” as follows: “1. The condition of being vacant or unoccupied. 2. An empty or unoccupied space. 3. Aposition, an office, or a place of accommodation that is unfilled or unoccupied.” The American Heritage Dictionary of the English Language 1969 (3d ed. 1979). Our own cases, both before and after the ratification of the 1983 Constitution, give the term “vacant” a similar definition. See Pittman v. Ingram, 184 Ga. 255, 256-257 (190 SE 794) (1937) (“office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it”) (Citation and punctuation omitted.); Parkerson v. Hart, 200 Ga. 660, 664 (38 SE2d 397) (1946) (“[w]hen there is no one to fill the office, a vacancy exists”) (Citation and punctuation omitted.); Garcia v. Miller, 261 Ga. 531 (2) (408 SE2d 97) (1991) (office is not vacant so long as it is filled by an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it).
Therefore, the ordinary meaning of the term vacancy is, in essence, a public office without an incumbent. The newly created positions on the Court of Appeals certainly fit this definition. See also 63C AmJur2d Public Officers & Employees § 111 (“[A] newly created office, which is not filled by the tribunal which created it, becomes vacant on the instant of its creation, and remains so until it is filled by an incumbent. The term ‘vacancy’ thus applies to an existing office without an incumbent, though it has never been filled.”); Throop, A Treatise on the Law Relating to Public Officers and Sureties in Official Bonds § 431 (1892) (“An existing office without an incumbent is vacant, whether it be a new or an old office.”). Accordingly, the constitutionality of OCGA § 15-3-4 (b) is supported by this ordinary definition and plain meaning.
Nonetheless, Clark contends that we should look to OCGA § 45-5-1[3] to determine the meaning of “vacancy.” Clark argues that only the *897 limited number of situations listed in that statute may be properly considered a vacancy, and a newly created position is not contained in this list. Clark’s argument is misplaced for several reasons. First, it rests on the false premise that the list contained in OCGA § 45-5-1 may. provide the sole definition of a constitutional term. Nothing in Article VI, Section VII, Paragraph III states that the Legislature is given the power to exclusively define the term “vacancy” as it is used therein. To the contrary, the 1983 Constitution’s drafters appear to have intended that “vacancy’ be interpreted in a broad sense, as they gave the term no limitations.[4] Second, Clark contends that the terminology of OCGA § 45-5-1 directly contradicts OCGA § 15-3-4 (b), and, as such, the latter statute should not be followed. Even if we were to assume that an actual conflict existed, “the courts are not only to be guided by the General Assembly’s last expression on a subject, but the latest declaration controls.” (Citations omitted.) Tippins Bank & Trust Co. v. Southern Gen. Ins. Co., 266 Ga. 97, 98 (464 SE2d 381) (1995). OCGA § 15-3-4 (b) is the last expression, andit allows the gubernatorial appointment of Court of Appeals judges to newly created seats. Finally, Clark’s contentions regarding OCGA § 45-5-1 (a) fail because that statute addresses the topic of when an office has been vacated, not when a vacancy exists. Prior to having an occupant, a newly created office cannot be vacated because no incumbent exists to vacate it. However, the 1983 Constitution allows the Governor to appoint whenever a vacancy exists, not just when an office has been vacated.
Therefore, for all of the reasons discussed above, the broadly used meaning of “vacancy” includes a newly created position on the Court of Appeals.
*898 (b) The history of gubernatorial appointments also gives support to a finding that OCGA § 15-3-4 (b) is constitutional. The Court of Appeals was established in 1906 by constitutional amendment, and the amendment provided explicitly that the newly created judicial offices — the three original seats on the Court of Appeals — were to be filled initially by popular election. See Ga. L. 1906, p. 24. Ten years later, the Court of Appeals was expanded to six judges, and consistent with the explicit direction of the 1906 amendment, the three additional seats were filled initially by election. See Ga. L. 1916, p. 56. In 1945, however, Georgia adopted a new Constitution, and although it authorized the General Assembly to establish new seats on the Court of Appeals by statute, it omitted the provision of the 1906 amendment that newly created seats on the Court of Appeals be filled initially by election. See Ga. Const, of 1945, Art. VI, Sec. II, Par. VIII. In 1960, legislation was passed to add a seventh judge to the Court of Appeals, and although it did not explicitly direct how the new seat was to be initially filled, it clearly contemplated that the seat would be filled prior to any election. Accordingly, a judge was appointed to the seventh seat by then Governor Ernest Vandiver and commissioned for a period prior to running in a general election. See Ga. L. 1960, pp. 158, 160. In 1961, two more positions were created on the Court of Appeals, and, once more, they were initially appointed by Governor Vandiver. See Ga. L. 1961, pp. 140, 142. For the first time after our current Constitution was adopted, in 1996, a tenth judge was added to the Court of Appeals, and legislation explicitly provided for an appointment by the acting governor. See Ga. L. 1996, p. 405. Finally, in 1999, two additional judgeships were created, and, again, the legislation establishing the positions expressly provided that the governor would make appointments to the newly created seats. See Ga. L. 1999, p. 10.
The historical practice is clear. Although Clark and the dissent rely on the use of elections to fill the first six seats on the Court of Appeals, those seats were established under the 1906 constitutional amendment, which explicitly required elections to fill the newly created seats. Although much of the 1906 amendment was carried forward into later Constitutions, the provision for new seats to be filled initially by election was omitted from the 1945 Constitution, the 1976 Constitution, and most importantly, the 1983 Constitution. Since 1945, whenever the General Assembly has exercised its constitutional authority to create new seats on the Court of Appeals by statute, it has authorized (explicitly or implicitly) the acting Governor to fill those seats initially by appointment, and the Governor has done so. “[T]hough that legislative precedent might not be dispositive, it is *899 entitled to some respect.”[5] (Citation omitted.) DeKalb County School Dist. v. Ga. State Board of Ed., 294 Ga. 349, 357 (751 SE2d 827) (2013). Moreover, at the time that the 1983 Constitution was enacted, this practice was well under way. Therefore, we must assume that the drafters of the 1983 Constitution were well aware of this practice and saw no need to change it. Instead, they intended for the Governor’s authority to fill vacancies under Article VI, Section VII, Paragraph III to extend to newly created seats on the Court of Appeals when the General Assembly has not made other provisions for filling the seats.[6]
4. Although Clark and the dissent contend otherwise, OCGA § 15-3-4 (b) does not serve to wholly disenfranchise the citizens of Georgia with regard to the newly created seats on the Court of Appeals. To the contrary, all three of the new judges will be required to run in a nonpartisan general election to keep their new positions. As in the similar case of Perdue v. Palmour, 278 Ga. 217, 221 (600 SE2d 370) (2004),
[t]his case is not resolved by a subjective opinion of how extensive the power of the governor should be in regard to appointments to elective office. It is determined by the unambiguous mandate of the constitution as ratified by the voters of Georgia. It is about implementing the last expression of the sovereign will of the people, in this case, [the Governor’s power to fill vacancies under Article VI, Section VII, Paragraph III of the 1983 Georgia Constitution].
That power enables the Governor to appoint Court of Appeals judges to newly created seats.[7] The dissent’s analysis, which focuses on *900 language only contained in the 1945 Georgia Constitution, has no bearing on this result, as it is the 1983 Constitution which must inform our opinion. As such, the trial court properly denied Clark’s petition for a writ of quo warranto. In addition, for the reasons set forth above, the Governor’s cross-appeal must be dismissed as moot.

Judgment affirmed in Case No. Si 6A0559. Appeal dismissed as moot in Case No. S16X0560.

All the Justices concur, except Benham, J., who dissents.

 “The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging. .. .” OCGA § 9-6-60.

 Clark argues that, without exception, Article VI, Section VII, Paragraph I requires all Court of Appeals judges to be elected in a nonpartisan election. This argument, however, ignores other constitutional provisions which clearly show that there are exceptions to this rule. The power of the Governor to make appointments in the case of vacancies, itself, is such an exception. This is further exemplified by Article VI, Section VII, Paragraph IV, which provides: “An appointee to an elective office shall serve until a successor is duly selected and qualified and until January 1 of the year following the next general election which is more than six months after such person’s appointment.”

 This statute provides:
(a) All offices in the state shall be vacated:
*897 (1) By the death of the incumbent;
(2) By resignation, when accepted;
(3) By decision of a competent tribunal declaring the office vacant;
(4) By voluntary act or misfortune of the incumbent whereby he is placed in any of the specified conditions of ineligibility to office;
(5) By the incumbent ceasing to be a resident of the state or of the county, circuit, or district for which he was elected;
(6) By failing to apply for and obtain commissions or certificates or by failing to qualify or give bond, or both, within the time prescribed by the laws and Constitution of Georgia; or
(7) By abandoning the office or ceasing to perform its duties, or both.

 In comparison, the Governor’s ability to fill vacancies in the executive branch appears to be more limited. “When any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy unless otherwise provided by this Constitution or by law; and persons so appointed shall serve for the unexpired term unless otherwise provided by this Constitution or by law.” Ga. Const, of 1983, Art. V, Sec. II, Par. VIII (a).

 The 1945 Constitution not only omitted the provision that newly created seats on the Court of Appeals be filled initially by election, but it also established a seventh seat on the Supreme Court and provided explicitly that that seat was to be filled initially by gubernatorial appointment. That provision of the 1945 Constitution was the most recent constitutional expression of the will of the People on the way in which a newly created judicial office on a statewide appellate court was to be initially filled.

 We note that, at the regular session of the General Assembly following the effective date of the Georgia Constitution of 1983, bills were passed creating four new seats on superior courts. These bills explicitly stated that the seats would be initially filled by an appointment by the Governor. See Ga. L. 1984, p. 434, § 2 (Cobb Judicial Circuit); Ga. L. 1984, p. 451, § 2 (Atlanta Judicial Circuit); Ga. L. 1984, p. 469, § 2 (Clayton Judicial Circuit); and Ga. L. 1984, p. 472, § 2 (Houston Judicial Circuit). “Courts long have acknowledged that, when a legislature enacts a statute that touches upon a constitutional provision close in time to the adoption of that constitutional provision, the statute is powerful evidence of the contemporary understanding of the constitutional provision.” (Citation omitted.) DeKalb County School Dist. v. Ga. State Board of Ed., 294 Ga. at 355 (1) (a), n. 12.

 We do not reach any question of whether the General Assembly may create new judicial seats and require that those seats be initially filled by general election.