**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2025**

# In the Court of Appeals of Georgia

A24A1591. DYKES v. ATLANTA PAVING & CONCRETE CONSTRUCTION, INC. et al.

PIPKIN, Judge.

Appellant Gwendolyn D. Dykes filed a notice of appeal seeking to challenge an order from the Superior Court of Gwinnett County dismissing her claims against Appellee Atlanta Paving & Concrete Construction, Inc. ("Atlanta Paving") and others. As more fully set forth below, we lack jurisdiction to consider this appeal, and it must, therefore, be dismissed[1].

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of overruling *Avery Enterprises v. Lyndhurst Builders*, 304 Ga. App. 353 (696 SE2d 389) (2010) and *Caswell v. Caswell*, 157 Ga. App. 710 (278 SE2d 452) (1981).

We set out the facts to provide context and highlight the procedural history of this case. Sometime in 2018, Appellant's husband, James Dykes, sold Dykes Paving and Construction Company, Inc. ("Dykes Paving") to Atlanta Paving for over $3.8 million; the terms of the sale were memorialized in a Stock Purchase Agreement ("SPA"), and the debt owing to James Dykes was secured by a promissory note and guaranty executed by Atlanta Paving owner Ernest T. Lopez. The SPA required Dykes Paving to maintain life insurance policies on James and contained specific provisions regarding withdrawing from and/or borrowing against the cash value of the policies (in the event the loan payments under the promissory note were not being paid) while James was still alive, as well as provisions concerning the payment of the proceeds from the policies upon his death.

James died in September 2022. Pursuant to the provisions of the SPA regarding payoff of the note from the insurance proceeds in the event of James' death, on February 14, 2023, Appellant received a check for $2,475,000 from the insurance proceeds. Appellant credited this amount toward payment of the note, which, she alleged, left a balance of $45,331.14 plus interest. In March 2023, Appellant filed a verified complaint against Atlanta Paving, Dykes Paving, and Lopez (collectively

"Defendants"), asserting claims for breach of contract (the SPA), default under the promissory note and guaranty, and attorney fees. The Defendants answered and asserted several counterclaims, including a claim for slander of title based on an allegation that Appellant was required to cancel the promissory note because it had been paid in full. Defendants also moved to dismiss Appellant's complaint, asserting that overlapping claims had been filed against them in a lawsuit filed in another county, that the promissory note was not in default, and that Appellant was not a party to the contract documents she alleged had been breached. The trial court granted the motion to dismiss on October 18, 2023,[2] noting that because Defendants' counterclaims remained pending, the case would remain open on the court's docket. Appellant sought a certificate of immediate review from the trial court under OCGA § 5-6-34 (b), but her request was denied.

Subsequently, Defendants withdrew their claims for slander of title and on April 23, 2024, voluntarily dismissed their remaining counterclaims without prejudice pursuant to OCGA § 9-11-41. On May 21, 2024, Appellant filed a notice of appeal; in

---

[2] The trial court noted that some of Appellant's claims were also part of the separate pending litigation in Fulton County.

her notice, she identified the order being appealed as the trial court's October 18, 2023 order granting the Defendants' motion to dismiss her complaint.

Although not raised by the parties, the first question we must answer is whether we have jurisdiction to consider this appeal. See *Studdard v. Satcher, Chick, Kapfer*, 217 Ga. App. 1, 3 (456 SE2d 71) (1995) ("It is incumbent upon us, even without prodding by the parties, to inquire in our jurisdiction over this appeal. In every matter coming to this court, we are required to examine the record to make certain we possess jurisdiction.") (citation and punctuation omitted). To determine whether we have jurisdiction over this appeal – which involves a party attempting to directly appeal an order that was interlocutory at the time it was entered after the non-appealing party voluntarily dismissed all of its pending claims – we must turn to the governing statutes contained in our Appellate Practice Act. This is because "[t]he right to appeal . . . depends on statutory authority, *Jones v. Peach Trader*, 302 Ga. 504, 511 (III) (807 SE2d 840) (2017), and where the statutory requirements for an appeal are not met, we cannot exercise jurisdiction." (Punctuation omitted.) *Perry v. Paul Hastings*, 362 Ga. App. 140, 141 (866 SE2d 855) (2021). As our Supreme Court recently reiterated,

[w]hen [the courts] consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. If the statute text is clear and unambiguous, we attribute to the statute its plain meaning.

(Citations and punctuation omitted.) *Cook-Rose v. Waffle House*, 320 Ga. 567, 569 (2) (910 SE2d562) (2024).

We start with OCGA § 5-6-38, which requires a party to file "a notice of appeal within 30 days after entry of the *appealable* decision or judgment complained of[.]" (Emphasis supplied.) To determine what constitutes an appealable decision or judgment, we look to the "procedures laid out in two code sections, OCGA § 5-6-34 and OCGA § 5-6-35." *Cook-Rose*, 320 Ga. 567, 569 (2). As explained by our Supreme Court in *Peach Trader*, "[o]ur statutes set out a particular set of cases as eligible for direct appeal in OCGA § 5-6-34 (a).[3] Such review may be mandatory or

---

[3] OCGA § 5-6-34 (a) states as follows: "Appeals may be taken to the Supreme Court and the Court of Appeals from the following *judgments and rulings of the superior courts* [*and other courts named therein*] from which appeals are authorized by the Constitution or laws of this State[.]" (emphasis supplied).

discretionary. OCGA § 5-6-35 (a). Other cases can be appealed with permission from both the trial court and the appellate court. OCGA § 5-6-34 (b)." 302 Ga. at 511 (III). As to OCGA § 5-6-34 (a), that provision sets out thirteen judgments or orders which may be directly appealed to either this Court or our Supreme Court. In this case, we are concerned only with OCGA § 5-6-34 (a) (1), which authorizes a direct appeal from "[a]ll *final judgments*, that is to say, where the case is no longer pending in the court below, except as provided by OCGA § 5-6-35 [providing for discretionary review of certain cases]." (Emphasis supplied.) As we explained in *Spring-U Bonding Co. v. State*, 200 Ga. App. 533 (408 SE2d 831) (1991), an order "constitutes a final judgment within the meaning of OCGA § 5-6-34 (a) (1) where it leaves no issues remaining to be resolved, *constitutes the trial court's final ruling* on the merits of the action, and leaves the parties with no further recourse in the trial court." (Citation, punctuation, and emphasis omitted and supplied.) *Spring-U Bonding*, 200 Ga. App. at 533.

It is undisputed in this case that, at the time the trial court entered the October 18, 2023 order dismissing Appellant's claims, Defendants' counterclaims remained pending, and the October 2023 order could be appealed only by following the interlocutory appeal procedure set out in OCGA § 5-6-34 (b). See *Paces Funding v.*

*Tilman*, 372 Ga. App. 168, 171 (a) (904 SE2d 18) (2024); see also *Seals v. State*, 311 Ga. 739, 741-742 (2) (a) (860 SE2d 419) (2021), disapproved on other grounds by *Gonzales v. State*, 315 Ga. 661, 665 n.7 (884 SE2d 339) (2023). Appellant was unsuccessful in pursuing an interlocutory appeal of that order, and when the Defendants voluntarily dismissed their counterclaims without prejudice in April 2024, Appellant filed a notice of direct appeal within 30 days of the voluntary dismissal. In her notice of appeal, Appellant specifically designated the trial court's October 18, 2023 order dismissing her claims as the order being appealed, which, she stated, "became final" when Defendants voluntarily withdrew their counterclaims. Thus, we must answer two questions in this case – whether the Defendants' voluntary dismissal of their counterclaims was an appealable, final judgment in this case from which Appellant could pursue a direct appeal, and, if not, whether the prior interlocutory order, which was entered more than 30 days prior to the filing of the notice of appeal, "became" final when all claims were disposed of and could be directly appealed as if it was a final order entered on the date of the voluntary dismissal. We answer both of these questions in the negative.

We first consider whether the Defendants' voluntary dismissal of their counterclaims was an "appealable decision or judgment" within the meaning of OCGA § 5-6-38 from which Appellant could file her notice of appeal. Although the voluntary dismissal arguably satisfied two of the criteria that must be met to constitute a final judgment under OCGA § 5-6-34 (a) (1) – there were no issues that remained to be resolved in the trial court and the parties had no further recourse there – we cannot "ignore[] the full language of that Code section, which applies only to 'judgments and rulings of the superior courts' under subsection (a) and to 'final judgments' under subsection (a) (1)." *Meister v. Brock*, 268 Ga. App. 849, 850 (1) (602 SE2d 867) (2004). As we have observed before, "a voluntary dismissal [is] neither a judgment (or other order) *rendered by a court* having jurisdiction over the matter[.]" (Emphasis supplied.) *Studdard*, 217 Ga. App. at 2-3. See also *Cook-Rose*, 320 Ga. at 571 (2) ("Indeed, . . . a voluntary dismissal is not a final judgment under OCGA § 5-6-34 (a) (1), because that code section applies only to 'judgments and rulings' of certain courts and a voluntary dismissal is not such a judgment or order."); cf *Page v. Holiday Inns*, 245 Ga. 12, 13 (262 SE2d 783) (1980) (calling a voluntary dismissal under what is currently OCGA § 9-11-41 (a) "an order by virtue of the statute" for the purpose

of allowing it to be corrected under OCGA § 9-11-60 (g) but making plain that it is *"not* a judgment of the court.") (emphasis supplied). Thus, even if the voluntary dismissal of the Defendants' counterclaims brought finality to the case, our precedent is clear that it was not an appealable decision or judgment within the meaning of OCGA §§ 5-6-34 (a) (1) and 5-6-38.

Appellant, however, identified the trial court's October 2023 order dismissing her claims as the order appealed, asserting that it "became final" by virtue of the voluntary dismissal. But, as we recently reiterated in *Paces Funding*, we look to the point in time when the order was *originally entered*[4] in determining whether it was a final ruling or judgment in the case and, thus, directly appealable under OCGA § 5-6-34 (a). 372 Ga. App. at 171 (a). See *Waye v. Continental Special Risks*, 289 Ga. App. 82, 84 (656 SE2d 150) (2007); see also *O'Dell v. Mahoney*, 324 Ga. App. 360, 361 (1) (750 SE2d 689) (2013) ("At the time [the subject] orders were entered, neither constituted a final adjudication of the case because [other] parties [remained] in the case."). Our Appellate Practice Act simply provides no mechanism for such an order to "become"

---

[4] To be clear, an order or judgment is "entered" for purposes of the Appellate Practice Act, when it is "signed by the judge" and filed with the clerk. See OCGA § 5-6-31.

a final order directly appealable in its own right. Rather, OCGA § 5-6-34 sets out only two ways in which a party can seek to appeal an interlocutory order. First, a party can seek to appeal an interlocutory order at the time it is entered under subsection (b), but both the trial court and the appellate court must grant permission for such an appeal. See *Peach Trader*, 302 Ga. at 511 (III); *Paces Funding*, 372 Ga. App. at 170. Second, where a party does not attempt or is unsuccessful in securing an interlocutory appeal under subsection (b), subsection (d) of OCGA § 5-6-34 also authorizes the appeal of an interlocutory order "where an appeal is taken under any provision of subsection (a), (b) or (c) . . . ." Obviously, the reference to subsection (a) means when a direct appeal can be filed from one of the orders or judgments listed in that subsection. The reference to subsection (b) means that if an appellant is successful in pursuing an appeal under that subsection, then the appellant may also challenge other orders that have been entered by the trial court. Subsection (c) refers to criminal cases involving a capital offense for which the death penalty is sought. As we determined above, Defendants' voluntary dismissal of their counterclaims did not constitute an appealable order or judgment under subsection (a); Appellant was already unsuccessful in pursuing an appeal under subsection (b) and the time to pursue that

avenue of appeal had passed; and subsection (c) applies to only specified criminal cases. There is no language in subsection (d) to suggest that interlocutory orders that may have been entered in a case somehow become final and can be directly appealed as if that order was itself a final order.[5] "Our interlocutory appeal statute is not a run-of-the-mill procedural provision[.] It is a *jurisdictional* law by which the General Assembly has limited the authority of Georgia's appellate courts to hear certain cases." (Emphasis in original.) *American Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 644-645 (732 SE2d 746) (2012) (Nahmias, J., concurring specially).

In this case, we have an order that was clearly not final at the time it was entered, and Defendants' subsequent dismissal of their counterclaims did not constitute a final judgment or order entered by a court from which an appeal may be taken under OCGA §§ 5-6-34 (a) (1) and 5-6-38. "The fact that the trial court's order [dismissing Appellant's complaint] would be reviewable [under OCGA § 5-6-34 (d)]

_____

[5] It is also worth noting that subsection (d) appears to limit consideration of interlocutory orders raised as part of an appeal under (a), (b) or (c) to those judgments, rulings or orders "which may affect the proceedings below." Thus, even when an interlocutory order may be raised on appeal when an appeal is taken under one of those subsections, it appears the appellate court retains some discretion concerning whether they consider it. This too demonstrates that an interlocutory order does not simply "become final" and appealable in its own right when the case is no longer pending before the trial court.

11

when enumerated as error on the proper designation of an appealable judgment, does not cure the fatal defect in the notice of appeal arising from the failure to appeal from such a judgment." (Citation, punctuation and emphasis omitted.) *Waye*, 289 Ga. App. at 84. "We decline to ignore the clear language in OCGA § 5-6-34 (a) [1] that direct appeals may only be taken from *orders* that are final and no part of the case remains pending in the trial court *at the time the order was entered*." (Emphasis supplied.) *Paces Funding*, 372 Ga. App. at 173 (b). Accordingly, we are without jurisdiction to consider the merits of this appeal.

Notwithstanding the foregoing, this Court has previously held that an order that was interlocutory when entered because of pending counterclaims "became" a final judgment when those counterclaims were dismissed and that, therefore, the time for filing a notice of appeal began to run at the time the counterclaims were dismissed, not when the trial court later entered a final judgment in that case. See *Caswell v. Caswell*, 157 Ga. App. 710, 710-711 (278 SE2d 452) (1981). However, by focusing on the language in OCGA § 5-6-34 (a) (1) defining "final" as no longer pending – and paying absolutely no heed to the fact that the word "final" refers to a final *judgment* of the trial court and that subsection (a) clearly refers only to *judgments or rulings* of the

specified courts – the analysis in that case was incomplete. Further, *Caswell* does not

cite to anything in the Appellate Practice Act to explain how an order that is

interlocutory when entered "becomes" final, or how the thirty days for filing a notice

of appeal should be calculated using a non-appealable voluntary dismissal as the

starting point instead of a later filed final order of the trial court. Thus, to the extent

*Caswell* conflicts with our holding here, it, and similar cases, must be overruled. See

*Avery Enterprise v. Lyndhurst Builders*, 304 Ga. App. 353, 354 (696 SE2d 389) (2010)

(citing *Caswell* and holding that "[w]hen the only claims remaining in a case are the

defendant's counterclaims, and those claims are then dismissed, the dismissal

constitutes a final order in the case from which the plaintiff may appeal.").[6]

---

[6] Although we more recently cited *Caswell* in *Hunt v. Callahan*, 353 Ga. App. 488 (838 SE2d 133) (2020), we need not overrule *Hunt*. Specifically, that case involved two trial court orders, one of which was clearly final at the time it was entered, and the issue concerned whether a discretionary application was necessary when the final order was less than the $10,000 threshold set out in OCGA § 5-6-5 (a) (6) but the earlier order did not require a discretionary appeal. Further, we note that both *Studdard* and *Waye* also involved appeals following voluntary dismissals, but in those cases the appealing party had also initiated the dismissal. Thus, while those cases discuss some of the same issues considered in this appeal, they turn on the appellate principle that a party cannot complain of an action that resulted from their own procedure and do not conflict with our holding here.

Lastly, we recognize that this result may seem unfair since it would appear that a party's right to appeal is at the mercy or whim of the opposing party. However, a party who finds themselves in this situation and wishes to seek review of an earlier interlocutory order is not without recourse. Instead, that party may request that the trial court enter a final judgment once the other party has dismissed their claims and brought the litigation to an end. In any event, any statutory "solution" to this jurisdictional quandary must come from the legislative branch because the courts are not "empower[ed] to create jurisdiction where it is not authorized by statute and is thus lacking." *Seals*, 311 Ga. at 749 (4). As our Supreme Court observed in *Seals,* "a court's task is to discern and apply the law's plain meaning as faithfully as we can, not to assess the consequences of each approach and adopt the one that produces the least mischief." Id. at 750-751 (4) (citing *BP P. L. C. v. Mayor and City Council of Baltimore*, 593 U. S. 230 (141 SCt 1532, 209 LE2d 631) (2021)). Accordingly, this appeal must be dismissed.

*Appeal dismissed. Barnes, P. J., and Gobeil, J., concur.*

A24A1591. DYKES v. ATLANTA PAVING & CONCRETE CONSTRUCTION, INC. et al.

MCFADDEN, Presiding Judge, dissenting to the decision not to hear this case en banc.

I respectfully dissent from our decision not to consider this case en banc and would have dissented if we had done so.

Today's opinion overrules two of our decisions, *Caswell v. Caswell*, 157 Ga. App. 710 (278 SE2d 452) (1981), and *Caswell*'s progeny, *Avery Enterprises v. Lyndhurst Builders*, 304 Ga. App. 353 (696 SE2d 389) (2010). Those opinions stand for the

proposition that one party cannot, by way of voluntary dismissal, foreclose the opposing party's right to appeal. Today's opinion overrules them on the basis that the "Appellate Practice Act simply provides no mechanism for [a non-final] order to 'become' a final order directly appealable in its own right."

That is not correct. It is well settled that a non-final order can become final as a consequence of events external to that order, and there is statutory support for the rule set out in *Caswell* and *Avery*.

Our Supreme Court held, in *Blash v. State*, 318 Ga. 325, 330 (1) (a), 332 (1) (c) (898 SE2d 522) (2024), that although an order denying a motion for new trial on some but not all counts was not directly appealable, the later entry of an order of nolle prosequi "made the judgment final." *Blash* is part of a long line of authority holding that, in certain circumstances, a premature notice of appeal can ripen. See, e.g., *State v. Hood*, 295 Ga. 664, 664-665 (763 SE2d 487) (2014); *Spears v. State*, 367 Ga. App. 92, 94-97 (1) (883 SE2d 866) (2023); and cases cited therein.

It is true that the case before us does not involve the ripening of a premature notice of appeal. But today's opinion indicates — particularly by its use of quotation marks around "become" and "become final" — that there is no mechanism under

2

the Appellate Practice Act for a non-final order to become final. That is inconsistent with our Supreme Court's opnion in *Blash*.

Our Supreme Court has also held that an appeal can become viable as a consequence of events external to the order on appeal, other than the entry of another order by the trial court. *Clark v. Deal*, 298 Ga. 893, 894 (2) (785 SE2d 524) (2016) ("the only remaining part of this action which remains viable is Clark's petition for a writ of quo warranto, which became ripe at the time that the new judges assumed office").

And we have held that our Supreme Court's denial of certiorari can cause an order to become final. *Crumbley v. Wyant*, 183 Ga. App. 802, 806-807 (360 SE2d 276) (1987), disapproved on other grounds, *Jones v. Peach Trader*, 302 Ga. 504, 510 (II) (807 SE2d 840) (2017). In *Crumbley,* a multi-party case, we held that a non-final order entered against one party became final when our Supreme Court denied certiorari to another. *Crumbley*, 183 Ga. App. at 806.

And in *Crumbley,* then-Judge Carley relied on statutory authority, the Civil Practice Act: "It has long been recognized that OCGA § 9-11-54 (b) defines and controls 'finality' for the purposes of determining appealability in actions involving

multiple claims or multiple parties." *Crumbley*, 183 Ga. App. at 805 (citing *Chadwick v. Miller*, 165 Ga. App. 20 (299 SE2d 93) (1983)).

All this is not to say that *Paces Funding, LLC v. Tillman*, 372 Ga. App. 168 (904 SE2d 18) (2024), on which today's opinion relies, was wrongly decided. In that case the party seeking to appeal amended their "complaint to dismiss all remaining claims solely to create appellate jurisdiction." Id. at 174 (b). And our Supreme Court has held, "A party's voluntary withdrawal of its motion for new trial, standing alone, is not the statutorily-required court order finally disposing of the motion for new trial." *Heard v. State*, 274 Ga. 196, 197 (1) (552 SE2d 818) (2001).

We have explained,

A voluntary dismissal is not a decision or judgment that may be appealed by a plaintiff. It is axiomatic that at the appellate level one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing. [The appellant] cannot use his own voluntary dismissal as the vehicle for appellate review of rulings entered by the trial court more than 30 days from the filing of the notice of appeal.

*Waye v. Continental Special Risks*, 289 Ga. App. 82, 84 (656 SE2d 150) (2007) (cleaned up).

But today's opinion is not about a party's attempt to use their "own voluntary dismissal as the vehicle for appellate review" of a ruling for which the appeal deadine had long passed. The question resolved in *Caswell*, supra, 157 Ga. App. 710, addressed again in *Avery Enterprises*, supra, 304 Ga. App. 353, and reopened today is the opposite question. This case is about a voluntary dismissal entered by an opposing party.

Perhaps today's question would be a close one if it were one of first impression. But it is not. And as it is not, we owe those decisions the respect of engaging in stare decisis analysis, which the majority omits.

> Generally, we "adhere to the principle of stare decisis, which directs the courts to stand by their prior decisions." *Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 677 (3) (821 SE2d 22) (2018) (citation and punctuation omitted). At the same time, "we recognize that stare decisis is not an inexorable command, and sometimes, there are compelling reasons to reexamine an earlier decision." Id. (citations and punctuation omitted). See also *Woodard v. State*, 296 Ga. 803, 812 (3) (b) (771 SE2d 362) (2015) ("[W]hen governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent. Stare decisis is . . . a principle of policy and not a mechanical formula of adherence to the latest decision." (Citation and punctuation omitted)). When we reconsider our prior decisions, "we must balance the importance of having the question *decided* against the importance of having it decided *right*." *Olevik v. State*, 302 Ga. 228, 245 (2) (c) (iv)

(806 SE2d 505) (2017) (emphasis in original; citation and punctuation omitted). To that end, we consider several factors in deciding whether to overrule a precedent, namely, the "soundness of its reasoning," the "age of the precedent, the reliance interests involved, and the workability of the prior decision." *Lawyer*, 304 Ga. at 678 (3). "The soundness of a precedent's reasoning is the most important factor." *Olevik*, 302 Ga. at 245 (2) (c) (iv).

*Frett v. State Farm Employee Workers' Compensation*, 309 Ga. 44, 51-52 (3) (844 SE2d 749) (2020).

Here, as explained above, the reasoning in *Caswell* is sound. Moreover the age of the precedent and the reliance interests at stake are salient. *Caswell* is over 30 years old. The majority acknowledges the unfairness of its ruling, and that ruling imposes upon parties like appellant a requirement to take steps not necessary under *Caswell* to mitigate that unfairness. So this case presents serious questions about reliance.

Today's opinion fails to show a compelling reason to reexamine *Caswell* and *Avery*. It hardly examines them at all.

And in reexamining them we should bear in mind that "OCGA § 5-6-30 puts a legislative thumb on the scale in favor of reaching the merits." *Premier Pediatric Providers v. Kennesaw Pediatrics*, 318 Ga. 350, 359 (3) (898 SE2d 481) (2024). That

provision directs that the Appellate Practice Act "shall be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be specifically referred to in this article." OCGA § 5-6-30.

That today's opinion closes by acknowledging the unfairness of the rule it creates is an indication that we have failed to heed that direction.

*Presiding Judge Barnes, Presiding Judge Doyle, Judge Land and Judge Watkins agree with this dissental.*